Let me please the Court. Michael Bubman of Bergen Rosen Beckman Corin on behalf of Plaintiff and Appellant Yumi Ito. Your Honors, the question that's presented in this appeal today is whether the District Court properly balanced the private and public interest factors in its Foreign Nonconvenience Analysis when it dismissed the action brought by an American citizen in her home jurisdiction against a foreign corporation. And if it did improperly balance those factors, did that failure to balance the factors properly constitute reversible error? This analysis has to start with the overlay of the fact that the standard to be applied here is that the plaintiff's choice of forum is rarely to be disturbed, especially in the circumstance where the plaintiff has filed in their home jurisdiction. The plaintiff is entitled to great deference when the plaintiff brings the action in their home jurisdiction. And that's the case in this situation. The defendant has a very high burden to overcome in that situation, and the defendant has to establish that there's such oppression and vexation of the defendant to be out of proportion with the plaintiff's convenience, which has to be shown as being slight or nonexistent. And that was just not present in the present case. The question that the Court first looks at in balancing these factors is evaluating the case that was filed. And in this situation, the Court was looking at a different case, it seems, than what was filed in the complaint. The complaint that was filed was an action based on fraudulent statements made by an agent of Tokyo Marine to Yumi Ito to induce her to come to the United States and continue her medical treatment to the point at which she would be determined to be, in American terms, permanent and stationary, at which point they could determine what the total value of her claim was. She did that. She listened to the insurance company. She believed what they said. And she came back to the United States in July of 1996. After she did that, there were then questions about whether they were going to pay her or not, subsequently raised. And while they paid, they started paying slowly. They didn't have the same kind of connection to payment that they did in Japan. Did you also sue for breach of contract? Yes, Your Honor. You did. So that was also, what were the claims you alleged in your complaint? The claims that were alleged in the complaint, there was a cause of action of a breach of contract, fraud, declaratory relief, bad faith, bad faith conduct in denial of the contract. And I believe there was one more claim. I'm not certain of the exact other claim that was filed. Was the contract entered into by your client or somebody else and she's kind of a beneficiary or something? Well, the contract that was referred to in the complaint was the contract that was created as a result of the representations that were made by the insurance company based on their obligation to pay her as a third party. When they told her, go to the United States, we will pay for your medical care there, that's the contract that we're talking about. That's oral contract. Yes, Your Honor. It is. So the injuries occurred in California. Those injuries did occur in California. Those injuries occurred. All representations were made to Yumi Ito in California. And the so, but the breach of the oral contract, the injury from that and the tort of bad faith, breach of the covenant of good faith and fair dealing, the injury from that would also have occurred in California. That's correct. All of that occurred at the point in time at which they stopped paying her and at the point in 2002 when she first learned that they had no intention of paying her despite their representations between the time of 1997 and 2002. Because I think this judge kind of thought that the injury or seemed to think that the injury that was at the heart of this dispute was the car accident, was from the car accident in Japan. I think that's absolutely correct, Your Honor. He clearly was looking at the car accident in Japan as the seminal issue in the case. And he evaluated all factors based on that. And, in fact, when he looked at what he was supposed to be evaluating, what he said is, well, all that's happening is the plaintiff is trying to get her medical expenses back that she incurred when she went to the United States. Completely missed the issue of the fact that there was a fraud claim and that there was a breach of contract claim, all of which related to things that occurred when she was in the United States to her in the United States. When the Court balanced the factors, what they did was they looked at the — the judge looked at the private and public interest factors and framed those in light of what was presented to him by the defendant, and didn't evaluate the plaintiff's claims in the lawsuit. In the private interest factors, that was where the first real problem occurred. When the judge looked at the resonance of the parties of the witnesses as a starting point, what he did was take at face value that every witness that was identified was necessarily relevant to each question involved. He thought there were 33 witnesses identified, but you definitely wouldn't need 33 witnesses to try this action. Well, what he had said was the — Judge Walter said that 32 of the 33 witnesses are Japanese and in Japan and speak Japanese. And, in fact, when you look at that 16 of them are attorneys, four of whom are our clients, Yumi Ito's former lawyers who are not involved. There is no evaluation at any point in time what is the purpose of the testimony of any of those witnesses. While there are witnesses related to the car accident who are relevant, there are basically three witnesses, the two drivers of the cars and the appellant in this case, who are related to that accident that was identified in any of the documentary evidence. Do you think that it should be remanded so that the court could determine what these witnesses would say and whether it's material and then make a ruling after that? At a minimum, I think that's what should happen. I think the court does need to properly evaluate, properly balance those factors to determine what the evidence is going to show, what the evidence is intended to be admitted at trial. There was no discussion, really, of the evidence relating to the appellant's witnesses, very little. This is a legal question, a question of law. So wouldn't we, if we think he misapplied the factors, just reverse? Well, I would think you would reverse, but there – I would suggest that the court reverse and remand for the case, or just reverse in general. There is some evidence or there is some case law that has – the court has said you didn't properly balance in the Eleventh District, I believe it was, that there was just not enough evidence presented. So the court needed to properly balance the case, balance all of the evidence presented to the court. So that, in that situation, there are situations where it has been remanded for further consideration by the court. But if there were that many witnesses who were material, it might be – it might swing it to some degree in the insurance company's favor, but that – I've never seen a case where you have so many attorneys who have to testify to anything. Well, it's difficult to determine what it was that those attorneys would be testifying to that would even be relevant. In addition to the fact that when you look at their designation of 11 representatives from the insurance company, from claims adjusters to managers to assistant managers, there were three specific people from the insurance company who had communications with the appellant. That's all. Yet they identify 11 different people. There's just no relevance, or at least none is shown with respect to what they may be testifying about. So they need to be put to task on that issue. Yet the court just took this evidence and said – and in fact, it wasn't even evidence. The court took the statement and said, this is sufficient. I'm going to accept that there are further two witnesses. So, Bill, we can ask your opposing counsel what the witnesses were going to testify to if the district court relied on their statement that there were 33 witnesses. We can just ask when he gets up to speak and ask what they were going to all testify to, right? Well, that's not evidence. There was no evidence presented. Right, but the district court relied on their statement that they had 33 witnesses. Yes. Okay. The district court did rely on that. In fact, there was evidence presented by the which included a number of people here in the United States, some of whom weren't specifically identified but were obvious from the situation. For example, there were additional surgeries that were required beyond the surgeries specified by Dr. Giordano and Dr. Asaki, but Dr. Sasaki. Yet those surgeries, they didn't specify who had performed those surgeries. They were necessarily surgeries conducted by another doctor. It was another discipline. So they clearly had to be conducted where they had a surgery for the appellant's breast cancer that she suffered. In addition, she had a surgery for her jaw. Those are surgeries that would not be done by either a plastic surgeon or an orthopedic surgeon. So clearly those are additional witnesses that would be relevant to the situation with respect to the appellant's testimony. What needs to be proven in this that her subsequent medical expenses were a consequence of the automobile accident? Is that what this is? Well, there are a couple of things. Number one, there is the issue of how the injuries related to the automobile accident. And number two, assessing the damages that she sustained. Is that expert testimony? Well, some part of it, some part of it would be expert testimony with respect to the damages that were related to, that were related to the underlying car accident. But the evidence with respect to her damages, I would imagine with respect to future medical needs, would be expert testimony. There would be percipient witness testimony as to what her existing medical injuries were, what the cost of those services were. So. Okay. Now what about all the documents? The district court also relied on there being so many documents in Japan. Your Honor, quite frankly, I don't know how the court concluded that other than the statement that there were basically four categories of documents that were in the statement provided by defense counsel, which included the underlying file related to the car accident, the court's file, the medical records, and, again, the attorney's files. How any of that related to this action, I, quite frankly, don't get it because this is about the fraud claim. This is about the breach of contract. It's not about what the attorneys had in their file in the underlying action that was resolved. So that, that is not related to this situation. And, in fact, the court made an error in what it stated in its order when it said all of the events prior to August of 1997 took place in Japan. Well, in fact, that's not correct. Thirteen months of that period of time occurred in the United States. All of that medical treatment during that 13 months' time, all the additional surgeries, that was in the United States. That was not in Japan. So those records of that period of time, 60 percent of the period between the car accident and August 1997 date that the court cites took place in the United States. So all of those records are here in the United States, not in Japan. I guess you'd still have to show some circumstances of what happened at the accident in order to show that these subsequent injuries and medical expenses came from that,  That's right. You would. to show she had a broken leg or back or whatever it was. That's right. Would that be from Japanese experts there? It wouldn't need to be from Japanese experts. It would need to be presented from you would have some precipient witness testimony. You would also have some testimony from certain experts, perhaps accident reconstruction experts if necessary, as to the causation issue if causation were denied. As I understand it, Tokyo Marine didn't contest or they paid for all the initial damages, the damages as she was incurring them in Japan. But when she came back to the United States, that's when they stopped paying. So they didn't take the position that they didn't owe her some money while she was in Japan. Well, there was a period of time during which they paid in the United States. They did continue to pay. They paid directly to the hospital when she was in Japan. When she came to the United States, part of the promises that were made to her involved her finding her own physicians to treat her in the United States. That was incumbent on her. She came to the United States. She found the doctors necessary to treat her. She paid them out of pocket and then was reimbursed from the insurance company. They didn't pay directly. And those payments stopped in August of 1997. In addition, when she received payments, the payments that she received while she was in Japan were specifically identified as to what they were for. But when she received payments here in the United States, there were lump sums that were received, not identified. Nothing was specified in terms of whether it was payment for her injuries, payment for future medical, payment for the medical expenses she had already incurred. So there's just no way for her to determine what those numbers were for, what the dollars were for. Is Japanese law applicable in this case or is it American law? The Japanese law that would be applicable here would be in terms of the insurance contract and evaluating that insurance contract. But in terms of the procedural law, it would seem to me that the procedural law that is appropriate here is the law of the local jurisdiction. Is there a limitation under Japanese law as to how much the insurance company would owe a person hurt like this? In Japanese, in the Japanese insurance policy, there are two different insurance policies. There's the comprehensive underlying policy that is capped by Japanese law. And then there is the voluntary policy that is essentially an excess policy. And the matters relating to the comprehensive policy were resolved in the Japanese litigation and determined by that court. It was matters relating to the voluntary policy that were coming over to the United States litigation. I'd like to reserve my remaining time for rebuttal. Thank you. Thank you. Good morning. Tim Thornton for Appalachia Tokyo Marine. A motion to dismiss for forum nonconvenience is committed to the sound discretion of the trial court and to be reversed only if there's a clear abuse of that authority. And the court has to look to see did the district court consider all the factors that are outlined in Gulf Oil and its progeny and did it balance those in a reasonable manner. And if it did, then its decision deserves substantial deference. In this case, there's no dispute about whether or not Japan's inadequate alternative forum and the focus of the appellant's appeal is that there was not a public and private factors. We contend that there was. The first thing that they point, they argue is that there was no consideration whatsoever given by the court in its decision about Yumi Ito's residence or citizenship in California. Yet the court did discuss that at page, volume two, page 373 of the excerpt of record at page, that's page one of its decision. It talks about that she's a plaintiff, is a naturalized American citizen since 62 and that she's a California resident since 76. It discusses the fact that she filed her suit in the L.A. Superior Court. At the next page, it talks about the fact that the court gives substantial deference to the plaintiff's choice of forum, especially when they're a U.S. citizen. Should that be pretty crucial in a case? That is an important factor, to be sure, but it's not the end-all of the inquiry. It's one of the factors that the court then considers with all of the other factors, private and public factors identified by the court. Isn't it more than that? You mentioned Gulf Oil. They stated that the plaintiff's choice of forum should rarely be disturbed unless strongly in favor of the defendant. Right. That's Gulf Oil. That's right. That's right. And we contend that this is such a situation. So it isn't just little factors we're balancing. We're balancing it in terms of whether that strong policy should be overcome. That's right.  Now, in this situation, there's a lot of history. There's a very long complaint, about 90 pages, and there's a prior lawsuit in Japan in which Yumi Ito sought damages for personal injury sustained in the automobile accident. I just don't see. I read your underlying memo in support of your motion. I don't see how the case is that complicated. I mean, the center of the dispute is your client's determination in August of 1997 that the medical expenses she was occurring in the United States were not related, were not causally related to the accident, and they wrote her a letter and said we're not going to pay. Right. And now, to me, that seems to be the question, the sole question, because if they were causally related, then your client is obligated to pay. Right, and that prior litigation has nothing to do with it because we're talking about. I'm sorry, but I don't think that's right, Your Honor. Okay, well, yeah, that's why I'm asking the question. So she was not happy with. You didn't. I'm sorry. You didn't hear me out. I mean, you don't have to relitigate the accident and whether the comprehensive general liability policy covered, because you already paid under that policy, right? They paid under both the comprehensive and the voluntary policy. They reached the limit of the comprehensive, right? That's right, yes. Okay, so then we go to the excess level, and that's where the dispute is. That's right. Okay, and so it's whether or not you breach your obligations under the voluntary policy. That's right. Okay, so why is it so complicated? Why did we have to go back and revisit the accident and revisit the litigation to answer that question? Well, in a bad faith suit in California, and we assert California law doesn't apply and there's no bad faith in Japan, but in a bad faith suit you look at was the conduct of the insurance company reasonable, and how do you determine that? You look at the situation. Did they not pay enough for the given accident? In this case, Tokyo Marine insured Mr. Onizuga. They didn't insure Yumi Ito. She was a passenger in his car. And they were basically what we would call making an advance under their policy. They behaved differently in Japan than we'd say insurance companies do in America. They were making an advance against the ultimate liability of their insured, Mr. Onizuga, to the extent that they thought that there was, you know, liability and that the damages sought were reasonably and necessarily related to that liability. But at a certain point they just started to dispute that. That's this cutoff letter. That was 1997. That's right. And she was in the United States being treated by United States doctors. That's right. And they stopped paying. That's right. So then in 2000, January of 2000, she filed a lawsuit in Tokyo District Court seeking damages from Mr. Onizuga, Tokyo Marines insured, which is to say to get whatever else is reasonable and necessary damages arising out of that accident. And then that case was settled. And that's sort of the end of that. That's really you have a settled personal injury lawsuit, and yet she's trying to go on with the personal injury lawsuit. But our position is you need to understand what happened in terms of that judicial. Personal injury lawsuit. This is what your letter says that. But the damages she seeks are all personal injury damages. In that. Go ahead. I was going to say, isn't it from a breach of contract or did I miss it? She alleges that, well, there's a breach of contract, which is the insurance contract. Then there's bad faith based upon the insurance contract. That is Tokyo Marines contract to Mr. Onizuga. Then she asserts that there's a novation when she came here. And actually it's important to note in her complaint she alleges that the statements that were made to her to stay in the U.S. and not keep going back and forth like she was doing, that those were made to her by, I can't remember the name of the gentleman, made to her in Japan before she came back here. And then she came back here and stayed here. So those are both the insurance contract. Then she calls a novation, a new contract in place of the old contract. A search is created by this statement to her and her decision to stay in the U.S. And then she tries bad faith on that novation contract. And then she has a fraud claim. And then basically a business and professions code section 17-200 claim for restitution and injunction. That type of stuff. So all of these tie back to the insurance contract. All of them tie back to Mr. Onizuga's liability. That's her connection to Tokyo Marine is Mr. Onizuga's liability to her. And so now she's trying to so this lawsuit basically is really seeking to retry that personal injury lawsuit. To say even though there was a full and final settlement in that prior lawsuit, I have more damages. Well, but in that settlement, didn't the judge there particularly comment on the fact that there's a proposed action in California, acknowledging that this is going to go ahead in California? That's right. The court did acknowledge that. That was put in at the instance of Nezito. And the courts basically, if you read the court statement, it's a statement of comity. Basically, we're not going to tell the California courts what they can or cannot do. Just we're settling this case. And Tokyo Marine is released in that settlement with regard to all damages arising out of the accident, as is Mr. Onizuga. Tokyo Marine was an intervener in that case. And so all of the damages because of medical care, et cetera, those are all wrapped up in that settlement. And that's why all that evidence is so important. That's why it's important to know what was the understanding of all the attorneys. There are some, you know, statements on the record. There's apparently negotiations off the record as to what's going to be settled and how much is going to be paid. At which point, there was a payment, an additional 28 million yen, in terms of resolving that case then and there. So... Well, it doesn't seem to me that this was a final settlement, like you're characterizing it as, if they're excluding from that the fact that there's going to be litigation in California as to the additional amount. There was, there's, the only thing that's left open is whether she can sue Tokyo Marine for bad faith. Okay? I think that's how I read the settlement. They're leaving open, you know, we're settling the claim, everything that happened out of the car accident, it's over and done with, 28 million more yen, and we're over and done with. And what's left then is you can sue, if you can figure out how to do it, you can sue Tokyo Marine for bad faith. You know, the problems are that in Japan there is no insurance of bad faith. The other problem in California is that... So isn't this a way to circumvent the settlement agreement, by taking it back to... That's certainly how we view it, yes, Your Honor. No, you're attempting to circumvent the settlement agreement... No. ...by taking it back to a place where she can't get the bad faith claim that she reserved in the settlement. I think that, I don't view it that way. From my perspective, this is just struggling to get things translated, to understand what went on, to figure out what's the factual background of the case, is kind of a nightmare. It still doesn't seem that complicated to me. Actually, that's a nightmare. Well, we do have a lot of witnesses there, those who were identified in our Rule 26 disclosures. The court didn't really know what they were going to testify to, though, did it? No, the court did not. But then again, if you look at, there's a footnote in Piper Aircraft v. Reno where the court talks about what type of disclosure is necessary. And there, the court referenced an attorney affidavit. They just identified the witnesses in a very general manner, just as is done, let's say, in a Rule 26 disclosure. And so our position is that this is an adequate disclosure for these purposes. And again, in a bad faith case, the focus of it is, is the conduct of the defendant, insurance company, reasonable? And that conduct is what's done by its employees as they handle a claim. And those people who handle this claim are all in Japan. All their documentation is in Japanese. The cutoff letter that Yumi Ito attached to her declaration and was attached to Mr. Nakane's declaration is written in Japanese and then translated for the court. So this is going to involve an inquiry about reasonableness. This is going to involve looking at all of this documentation, talking to all of these witnesses, and looking at, they're all going to be speaking Japanese. It's going to be translated. Is it your contention that the only issue to be tried in California is bad faith? It's our contention for this motion that the only issue left after the settlement was bad faith. Our contention in this motion or in this appeal is that California is an inconvenient forum. No, I know the motion, but I'm, is there, the issue that would be tried would be only bad faith of the insurance company? They assert it as bad faith and fraud and breach of contract. They assert all those theories. That's still open in the case. You say they don't have a cause of action, but they say they do, right? They say they do, I say they don't. That's right. But in terms of, like I said, in Piper Aircraft versus Reno, the court just talked about an attorney affidavit that indicated which witnesses would testify without a lot of detail. All that there was was a motion to dismiss reform nonconvenience without an answer having been filed and without even an attorney affidavit identifying witnesses or a Rule 26 disclosure to indicate that. And the plaintiff's position was, we're just going to put on our three bills of lading, and we didn't get the goods at the other end of the ocean carriage, and therefore we have just a prima facie liability. This type of case that Yumi Ito is bringing is just nowhere near as simple as that. I'm kind of of the opinion, as Judge Wardlaw expressed, that I have a hard time seeing how it's so complicated. We talk about a settlement, and your contention is that settled everything except for possible bad faith. Then we have all of the things that occurred that would have to be shown here in California as to the injuries and so forth. But are we just talking about the settlement and whether or not that forecloses these other aspects? And with regard to... Well, why do we have to get back into the accident and all the witnesses with regard to the accident? Why do we have to go through all the various attorneys? We've got a settlement document. The kind of the question is whether that forecloses, as you say it does, further action in California. We certainly take that position, but the appellant doesn't. Even in oral argument today, they're talking about injuries caused by that accident. That's the question to be litigated, right? That's the question they want to litigate. They're either going to litigate here or they're going to litigate in Japan. So that's the open question to be litigated, right? That's that they want additional damages as a result of that auto accident. I think that's one of the questions that they want to litigate, yes. That's how I read their complaint. The witnesses would seem to be the United States witnesses who treated her here in the hospital and so forth. There are witnesses here, Dr. Giordani, Dr. Sasaki that the appellant identified. Yes, I agree with that, but there's also witnesses there. There's Dr. Hiroka at Osaka Sekime Hospital. There's also the doctors who treated her initially for the first 40 days at Fujinomiya City Hospital. Just from experience in personal injury litigation, most of the medical records, more medical records in hospitalization than for outpatient treatment. Those were all paid for. What happened in Japan was paid for. What we're talking about, as I understand it, is what happened after she got here and was further treated. Tokyo Marine's position is the case was resolved for a lump sum payment, and that's for everything. To be litigated is whether that position is correct. Yes, but the amount they paid is the total for all the medical care in Japan and the U.S., all the loss of earnings for the entire time. Why did they make payments for 13 months in the United States? Not that it's relevant, really, to this motion. They were continuing to advance payment as long as they believed that there were reasonable and necessary medical expenses related to the accident. Lastly, I'd just like to discuss very briefly Luckman v. Evangelical Alliance. This was a case where a California plaintiff sued a Japanese defendant, and a form of nonconvenience motion was affirmed on appeal. In that case, there was an issue about copyright in a Japanese translation of a Bible. The plaintiff asserted they had the copyright to that, they were entitled to copyright damages, and that that suit should be tried in California. The defendants raised a defense that they owned the copyright, and all the other claims then fell in line with that. If they owned the copyright, there would be no specific performance, there would be no accounting, there would be no fraud, there would be no breach of fiduciary duty, there would be no conversion claim. And just like that, in this case, everything comes out of, these obligations come out of this Japanese contract of insurance, a liability insurance contract, and all the obligations come out of this auto accident in which Ms. Ito was injured. And all of those, since all of those were resolved in the Japanese action, or else relate to Japanese documents, Japanese witnesses, that the motion for a form of nonconvenience was properly granted. Thank you, Your Honor. Just a couple of points I'd like to make, Your Honors. First of all, with respect to a statement that was made that the representations were made to Ms. Ito in Japan, in fact, when you look at the record, what happened was just before she left the United States in July of 1996, she was told that the insurance company was contemplating having her stay in the United States. But there was no statement that she should stay in the United States. It was after she returned to the United States that she received the call from Tokyo Marines representatives saying, yes, stay in the United States, we've decided we want you to stay there, find your own doctors, and do what's necessary to take care of yourself. Those representations were made to her when she was in the United States. The settlement action related to the comprehensive policy only. That was all it was about, and that's why there was a reference in the Articles of Settlement that talked about this case, and they were talking specifically about the comprehensive liability policy, and that it did not resolve all of those matters. That's something that would be addressed by the district court once the case was tried. It's not an issue for the form nonconvenience motion. The form nonconvenience motion is determining what interest they are, the court is to protect, in terms of the different parties. And in this situation, they're protecting an American citizen's choice to litigate their case in the United States. This is far different than the Luckman case where you had a corporation that wanted to protect its pecuniary rights in a copyright that they said were infringed. And in the Luckman case, the court specifically said that there's no local interest in protecting your copyright. That's for your financial interests. In this situation, there is a very clear local interest, which is protecting the rights of American citizens who are defrauded in the United States by foreign companies, especially in a situation where here what they've done is, by defrauding her, they've basically taken all of her resources that she has spent now on all of her medical bills that may ultimately mean that the State becomes liable for her at some point when she can no longer pay her bills. The State, the United States clearly has an interest in this situation and in protecting this American citizen. With respect to the disclosure that was referenced in Piper, it's true that there is no more disclosure necessary. But when you only make a disclosure about a number of people and not what they're going to testify about, it doesn't give the court the ability to evaluate properly what's going to happen in the trial and which witnesses are relevant. If you make that limited disclosure, you take your chances that either the court is not going to properly evaluate the situation as occurred here or that they're going to say, we don't know what your witnesses are about, so we're not going to accept this. So that doesn't save the situation. Thank you. Thank you very much. Ito v. Tokyo Marine is submitted.
judges: Hug, Wardlaw, Siler